UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KERBY ALEXANDRA STRACCO, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW SAUL, Commissioner of Social )<br>Security, )<br>)<br>Defendant. )<br>_____ ) | Civil Action No. 1:18-cv-1187 (CMH/TCB) |

**REPORT AND RECOMMENDATION**

Pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g), Kerby Alexandra Stracco, ("Plaintiff") seeks judicial review of the final decision of Andrew Saul, the Social Security Commissioner ("Defendant"), finding that Plaintiff was not entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act.[1] On January 2, 2019, the certified Administrative Record ("R.") was filed under seal, pursuant to Local Civil Rules 5(B) and 7(C)(1). On July 3, 2019, Defendant filed his motion for summary judgment. Plaintiff did not file a motion for summary judgment or an opposition to Defendant's motion. Nonetheless, the matter is now ripe for resolution.[2] Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned U.S. Magistrate Judge recommends, for the following reasons, that Defendant's Motion for Summary Judgment (Dkt. 27) be GRANTED and that Defendant's final decision be AFFIRMED.

---

1. Plaintiff initially commenced this action against the former Acting Commissioner of Social Security Nancy Berryhill. However, pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul, Commissioner of Social Security, in his official capacity, was substituted as party defendant in the above-captioned action. Commissioner Saul began his tenure on June 17, 2019. (Dkt. 26.)

2. The motions and briefs in this case include Defendant's Motion for Summary Judgment (Dkt. 27) ("Def.'s Mot. Summ. J."), and Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Dkt. 28) ("Def.'s Mem. Supp.").

## I. PROCEDURAL BACKGROUND

Plaintiff initially applied for DIB on May 15, 2013, alleging disability with an alleged onset date ("AOD") of January 1, 2012. (R. at 21, 215-16.) Plaintiff's claims were first denied on August 1, 2013, then again on reconsideration on September 20, 2013. (R. at 21, 68-106.) On September 27, 2013, Plaintiff requested a hearing in front of an administrative law judge ("ALJ"). (R. at 131.) The hearing was held in front of ALJ Eugene Bond on February 11, 2014, with Plaintiff being represented by an attorney, and during which the testimony of Plaintiff was taken. (R. at 40-52.) At the conclusion of that hearing, Plaintiff submitted a motion to amend her AOD to July 8, 2013, (R. 243-44), which the ALJ eventually granted (R. at 21). The ALJ then held a supplemental hearing on August 18, 2014, at which Plaintiff and a vocational expert ("VE") testified. (R. at 53-67.) On September 25, 2014, the ALJ issued his decision denying Plaintiff's claims. (R. at 21-39.)

On November 20, 2014, Plaintiff requested review of the ALJ's decision to the Appeals Council for the Office of Disability and Adjudication and Review ("Appeals Council"). (R. at 15.) The Appeals Council denied Plaintiff's request for review on January 29, 2015, making the ALJ's decision the final decision of Defendant. (R. at 6-10.) On March 30, 2015, Plaintiff filed a complaint for judicial review of Defendant's decision in the United States District Court for the District of Delaware. (R. at 2970-81.) On March 16, 2017, the district court vacated the Defendant's decision and remanded the case for further proceedings. (R. at 2982-3027.)

On April 28, 2017, the Appeals Council remanded the matter to the ALJ for further proceedings. (R. at 3028-33.) On October 16, 2017, ALJ Susan Maley conducted another hearing, at which Plaintiff and a VE appeared and testified. (R. at 2935-69.) During that hearing, Plaintiff again amended her AOD, alleging an AOD of February 6, 2012. (R. at 2898, 2940-41.) Following the hearing, Plaintiff provided the ALJ with a narrative statement clarifying some of her testimony.

(R. at 2898, 3136-40.) On November 24, 2017, the ALJ issued her decision denying Plaintiff's claims for DIB. (R. at 2895-914.) On December 18, 2017, Plaintiff requested review of the ALJ's decision to the Appeals Council. (R. at 2927.) The Appeals Council eventually denied Plaintiff's request for review on July 20, 2018, again making the ALJ's decision the final decision of Defendant. (R. at 2888-94.)

Plaintiff then sought review in this Court of Defendant's decision, filing a complaint on September 17, 2018. (Dkt. 1.) Defendant filed an answer on January 2, 2019. (Dkt. 10.) Several weeks after Defendant filed his answer, Plaintiff's attorney moved to withdraw as counsel. (Dkt. 15.) On March 21, 2019, the Court granted the motion (Dkt. 20), after counsel provided a signed statement by Plaintiff agreeing to counsel's proposed withdrawal (Dkt. 19). On April 1, 2019, the Court granted Plaintiff thirty (30) days to obtain new counsel. (Dkt. 22.) No new counsel ever entered an appearance on behalf of Plaintiff.

On May 9, 2019, Defendant moved to set a briefing schedule. (Dkt. 23.) In the motion, counsel for Defendant noted that two (2) separate attempts had been made to coordinate with Plaintiff—now presumed to be proceeding *pro se* per the Court's earlier order—about setting a briefing schedule. (*Id.*) Plaintiff never responded. (*Id.*) On May 13, 2019, the Court entered Defendant's proposed briefing schedule order. (Dkt. 25.) Per that order, Plaintiff had until June 12, 2019, to file a motion for summary judgment. (*Id.*) Plaintiff made no such filing. Defendant then timely filed his motion for summary judgment. (Dkt. 27.) Plaintiff had until July 24, 2019, to file an opposition to Defendant's summary judgment motion. Again, Plaintiff made no such filing.

## II.  STANDARD OF REVIEW

Under the Social Security Act, the Court's review of Defendant's final decision is limited to determining whether the ALJ's decision was supported by substantial evidence in the record

and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 340 (4th Cir. 2012).

Substantial evidence has long been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Put another way, substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015). In reviewing for substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). The Court must defer to Defendant's decision "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). The correct law to be applied includes the Social Security Act, its implementing regulations, and controlling case law. *See Coffman v. Bowen*, 829 F.2d 514, 517-18 (4th Cir. 1987).

While the aforementioned standard of review is deferential, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision. *See id.* at 517. With this standard in mind, the undersigned evaluates the ALJ's findings and decision.

### III. THE ALJ'S DECISION

An ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine a claimant's eligibility. The Court examines this five-step process on appeal to determine whether the correct legal standards were applied in this case, and whether Defendant's resulting decision is supported by substantial evidence in the record. 20 C.F.R. §§ 404.1520, 416.920. In accordance with the five-step sequential analysis, the ALJ made

4

the following findings of fact and conclusions of law.

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since Plaintiff's amended AOD of February 6, 2012. (R. at 2900.) At step two of the sequential evaluation, the ALJ found Plaintiff's plantar fasciitis, obesity, history of mild traumatic brain injury ("TBI"), migraine headaches, bipolar disorder, and post-traumatic stress disorder ("PTSD") to be severe medically determinable impairments. (R. at 2900.) The ALJ determined that Plaintiff's other impairments—scoliosis, left ear hearing loss, and tinnitus—were non-severe as they did not exist for a continuous period of at least twelve (12) months, were responsive to medication, did not require significant medical treatment, or did not result in significant functional limitations. (R. at 2901.) At step three of the sequential evaluation, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 2902-03.) In between steps three and four of the sequential evaluation, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except Plaintiff could never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; carry out simple tasks in two (2) hour increments with fifteen (15) minute breaks in-between; only occasionally interact with coworkers and supervisors with no direct interaction with the general public; and only adapt to simple changes in a routine work setting. (R. at 2903-12.) The ALJ skipped step four pursuant to the "expedited process" set forth in 20 C.F.R. § 404.1520(h) and did not make a finding about Plaintiff's ability to perform past relevant work. (R. at 2913.) At step five, the ALJ determined that Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. at 2913-14.) Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined by the Social

Security Act, since Plaintiff's amended AOD of February 6, 2012. (R. at 2914.)

## IV.  ANALYSIS

As an initial matter, given this case's procedural history, the Court likely could have disposed of this matter for want of prosecution pursuant to Federal Rule of Civil Procedure 41(b). In fact, "courts in this Circuit routinely dismiss cases under similar circumstances." *Hager v. Berryhill*, Case No. 2:18-cv-00550, 2019 WL 2319307, at *2 (S.D.W. Va. Apr. 29, 2019), *report & recommendation adopted*, 2019 WL 2305942 (S.D.W. Va. May 29, 2019) (citing *Morgan v. Colvin*, Case No. 3:13-cv-00397-MR-DLH, 2014 WL 695284, at *3 (W.D.N.C. Feb. 24, 2014); *Dudley v. Colvin*, Case No. 4:12-cv-174, 2013 WL 3242377 (E.D. Va. June 24, 2013)). However, Defendant did not file a motion to dismiss and instead filed a motion for summary judgment. Moreover, because Defendant desires to proceed and dispose of this case on the merits, the undersigned will not recommend dismissal pursuant to the Court's "inherent power to dismiss an action on its own for failure to prosecute." *Morgan*, 2014 WL 695284, at *2 (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)).

Plaintiff, failing to file a motion for summary judgment, raises no points of error. "This Court generally decides appeals under the Social Security Act by considering the issues raised and argued in a plaintiff's brief. Courts are not required to guess as to grounds for an appeal, nor are they obliged to scour an evidentiary record for every conceivable error." *Ricks v. Comm'r of Soc. Sec.*, No. 2:09-cv-622, 2010 WL 6621693, at *7 n.7 (E.D. Va. Dec. 29, 2010) (quoting *Womack v. Astrue*, No. CIV-07-167-W, 2008 WL 2486524, at *5 (W.D. Okla. June 19, 2008)). However, when deciding a social security matter on the merits, a reviewing court should still "scrutinize the record as a whole to determine whether the conclusions reached are reasonable, and whether the hearing examiner applied correct legal standards to the evidence." *Id.* (internal quotations omitted).

A litigant's failure to raise an error does not obviate the court's duty to correct blatantly obvious prejudicial errors. Therefore, the undersigned will nonetheless conduct a review of the record to ensure the ALJ made no clear error of law and that substantial evidence supports the decision.

Defendant argues that the Court should affirm his decision because substantial evidence supports the ALJ's decision. (Def.'s Mem. Supp. at 24-30.) Upon review of the ALJ's decision and the record, the undersigned agrees.

In reviewing the record, the ALJ clearly applied the correct legal standard. As noted above, the ALJ addressed, as appropriate, each part of the five-step sequential evaluation analysis prior to reaching a decision. *See supra* Part III. The ALJ summarized the applicable standard in detail and then applied that standard faithfully to the facts of the case. (R. at 2899-914.) Accordingly, the ALJ made no clear error of law in this regard.

Next, the undersigned reviews the record to confirm that substantial evidence supports the ALJ's decision. Upon review, the undersigned finds the ALJ's decision is supported by substantial evidence. However, for the sake of completeness, the undersigned highlights several sections of the decision where, in other cases, disputes often arise.

For example, the ALJ provided a substantial discussion of the medical evidence in reaching his decision at step three that Plaintiff did not have an impairment or combination of impairments that equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 2902-03.) The ALJ found that Plaintiff's mental impairments only resulted in mild or moderate limitations. The ALJ recognized that though Plaintiff possesses limitations regarding understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself, the evidence established Plaintiff had a normal memory; could cook for herself and family; had normal social boundaries;

generally normal concentration; goal-directed thought processes; and could care for her personal needs. (R. at 2902-03.) Therefore, the undersigned finds that the ALJ's step three decision was not conclusory and was instead supported by substantial evidence.

Additionally, the ALJ properly formulated Plaintiff's RFC. The ALJ appropriately applied the two-step process. *See Craig v. Chater*, 76 F.3d 585, 594-95 (4th Cir. 1996). In doing so, the ALJ properly assessed the medical opinion evidence in the record by describing the weight given to each medical opinion and explaining the rationale for doing so.[3] (R. at 2909-11.) For instance, although the ALJ gave the opinions of Plaintiff's treating physicians less than controlling weight, the ALJ was well within her discretion to do so. Under the substantial evidence standard, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies, or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (citations and quotations omitted).

The ALJ properly discounted some treating physicians' opinions because they failed to describe any specific functional limitations in their findings. *See, e.g., Midkiff v. Berryhill*, No. 5:18-cv-57-BO, 2019 WL 1103392, at *2 (E.D.N.C. Mar. 8, 2019) (finding that the ALJ did not err in affording little weight to a treating source's opinion when the "opinion did not describe plaintiff's specific functional limitations"). The ALJ also discounted another treating physician's opinion for failure to document any clinical findings to support her circle-the-answer form opining about Plaintiff's functional limitations as well as for being inconsistent with the longitudinal record and the physician's own treatment records. (R. at 2910-11.) All of which are appropriate reasons to afford little weight. *Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per

---

3. Specifically, the ALJ, on remand, complied with the District Court's instructions to discuss Drs. Russell and Joyner and assign substantial weight (or at least discuss the issue) to some of the medical opinions. (R. 2909-11, 3003-04.)

curiam) (holding ALJ appropriately discounted treating physician's opinion when that "opinion was not consistent with the record or supported by the medical evidence"); *Barefoot v. Berryhill*, Civil No. 2:17-cv-105, 2018 WL 1915932, at *3 (E.D. Va. Apr. 23, 2018) ("[C]heck-box forms lacking any medical explanation or justification are not entitled to great weight, even when completed by the treating physician." (citation omitted)).

In addition to properly evaluating the medical opinion evidence when formulating the RFC, the ALJ completely complied with the Fourth Circuit's decision in *Bird*. Per *Bird*, an ALJ must normally "give substantial weight to a VA disability rating." 699 F.3d at 343. "However, because the SSA employs its own standards for evaluating a claimant's alleged disability . . . , an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Id.* Here, although Plaintiff has a 100% disability rating from the VA, the ALJ appropriately afforded the VA rating little weight. (R. at 2912.) The ALJ provided a detailed discussion of why the subjective and objective evidence in the record did not support the inclusion of any functional limitations not already accounted for in the RFC. The ALJ's decision here is further supported by her earlier comprehensive review of the evidence in the record. (R. at 2902-11.) Therefore, the ALJ did not err in giving Plaintiff's VA disability rating little weight.

Moreover, the ALJ's RFC complied with the Fourth Circuit's *Mascio* decision. *See Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). In that case, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "Therefore, the Fourth Circuit requires ALJs to explain the connection between the medical evidence considered and the accommodation, or lack thereof, for moderate limitations in concentration, persistence, and pace

in the residual functional capacity." *McNiff v. Berryhill*, Civil Action No. 1:18-cv-1411 (LO/JFA), 2019 WL 3161840, at *15 (E.D. Va. June 4, 2019), *report & recommendation adopted*, 2019 WL 3084235 (E.D. Va. July 15, 2019). An ALJ may satisfy this directive by formulating an RFC that provides for specific limitations beyond simply restricting plaintiff to unskilled work and including those limitations in the hypotheticals to the vocational expert. *See, e.g., id.* (collecting cases); *see also Dworak v. Colvin*, No. 3:15cv446 (JAG), 2016 WL 4111380, at *3-5 (E.D. Va. June 3, 2016), *report & recommendation adopted*, 2016 WL 4107698 (E.D. Va. July 29, 2016) ("Unlike *Mascio*, the ALJ here did more than restricting Plaintiff to simple, routine tasks or unskilled work. The ALJ accounted for Plaintiffs ability to 'stay on task' by limiting her to occasional exposure with supervisors, co-workers and the public." (citations omitted)). For instance, limiting a claimant to only performing simple tasks in two hour increments with fifteen (15) minute breaks along with other limitations is enough to satisfy *Mascio*. *See, e.g., McNiff*, 2019 WL 3161840, at *17.

Here, the ALJ's RFC and proposed hypothetical to the VE addressed both the complexity of work Plaintiff could perform as well as what pace Plaintiff could sustain such work. (R. at 2903, 2966.). For example, the ALJ restricted Plaintiff to performing only simple tasks in two (2) hour increments with fifteen (15) minute breaks in between as well as restricting her interactions with coworkers and the general public. In imposing these limitations, the ALJ built "an accurate and logical bridge from the evidence to [her] conclusion," *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)), by conducting a detailed review of the record with specific citations to medical evidence. (R. at 2905-07.) Moreover, in the ALJ's step three analysis, she already found that Plaintiff's treatment records indicated that Plaintiff had "generally normal concentration and liner, goal-directed thought processes." (R. at 2903.) Therefore, the ALJ properly complied with *Mascio* and adequately accounted for Plaintiff's

concentration, persistence, and pace limitations in the RFC and hypothetical to the VE.

Accordingly, the undersigned finds that the ALJ did not err in developing Plaintiff's RFC and that substantial evidence supports the ALJ's decision.[4]

Finally, the undersigned finds that the ALJ properly developed the record given Plaintiff's *pro se* status. The Fourth Circuit instructs that an ALJ has "a heightened duty of care to adequately develop the record" when claimants decline "to be represented by counsel at the hearing." *Craig*, 76 F.3d at 591. In this case, Plaintiff did retain counsel during the earlier portion of the administrative proceedings. In fact, Plaintiff was represented by counsel during Plaintiff's 2014 hearings in front of an ALJ. (R. at 40, 53.) Therefore, a significant portion of the record was already developed while Plaintiff had legal representation. Additionally, for the 2017 hearing in which Plaintiff did appear *pro se*, the ALJ more than complied with her "heightened duty" to develop the record. The ALJ elicited testimony from Plaintiff about her impairments, their effect on her ability to work, and her medical treatment. (R. at 2939-66.) The ALJ later accepted Plaintiff's narrative clarifications of her testimony. (R. at 2898.) Moreover, the ALJ thoroughly reviewed Plaintiff's medical records. (R. at 2902-11.) As a result, the undersigned finds that the ALJ adequately developed the record given Plaintiff's partial *pro se* status.

## V.　RECOMMENDATION

For the reasons set forth, the undersigned U.S. Magistrate Judge recommends that the Court Defendant's Motion for Summary Judgment (Dkt. 27) be GRANTED and that the final decision of Defendant be AFFIRMED.

---

4. To the extent the ALJ expressed doubts about the veracity of Plaintiff's TBI claims, (R. at 2905), the undersigned cannot find that any such commentary resulted in a blatantly obvious prejudicial error. Moreover, because the ALJ painstakingly went through the record, anchoring the mental functional limitations in the objective medical evidence, any error the ALJ committed would be found to be harmless.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to counsel of record and to:

Kerby Stracco
2710 South Veitch Street
Arlington, Virginia 22206

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

August 14, 2019
Alexandria, Virginia